(No. 14061.—Decree affirmed.)

WILLIAM S. CORBLY et al. Plaintiffs in Error, *vs.* LIDA CORBLY, Defendant in Error.

*Opinion filed October 21, 1922.*

1. BILLS OF REVIEW—*when discovery of written lease cannot be made basis of a bill of review.* Where a decree has been entered granting the relief prayed in a proceeding against a grantee to have a life interest declared in certain property in accordance with the complainant's contract with the grantor, the discovery of a written lease alleged to have been signed by the life tenant and the grantee cannot be made the basis of a bill by the grantee to review the decree, where the new evidence is not decisive of the original issue, and where the grantee, who must have known of the existence of the lease, did not set it up in the original proceeding by pleading or otherwise nor prove its loss and introduce secondary evidence, and his lack of diligence is not excused because of old age and weakness of memory.

2. SAME—*matter set up in original pleading cannot be basis of bill of review for newly discovered evidence.* Matter which was mentioned in the complainant's pleadings in the original proceeding, even though not referred to in the testimony, cannot be regarded as new matter upon which to base a bill of review for newly discovered evidence.

WRIT OF ERROR to the Circuit Court of Ford county; the Hon. SAIN WELTY, Judge, presiding.

C. R. IUNGERICH, and LYNN S. CORBLY, (ASA S. CHAPMAN, of counsel,) for plaintiffs in error.

C. E. BEACH, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill for review filed by leave in the circuit court of Ford county. A demurrer was filed, which after a hearing was sustained and a decree entered dismissing the bill. The cause has been brought here by writ of error.

The original bill, upon which was founded the decree which this bill seeks to review, was filed in the circuit court by defendant in error, Lida Corbly, and was dismissed by the trial court for want of equity. The decree on the original bill having come to this court on writ of error it was reversed and the cause remanded, with directions to enter a decree in favor of Lida Corbly. (*Corbly* v. *Corbly,* 280 Ill. 278.) In the opinion just referred to, the facts are set out at considerable length, and it will only be attempted here to set out such of the facts as will tend to reach a fair understanding of the present proceeding.

Lindsey Corbly was a man worth about $200,000, living in Paxton, in Ford county, and had several children, among them a son Fred. Defendant in error, Lida Corbly, who was a milliner, was the wife of Fred. The record in the former hearing tends to show that Fred was a man of somewhat reckless habits and not much relied upon by his father as possessing business ability. The evidence on the part of Mrs. Corbly on the original hearing was substantially to the effect that she entered into a contract with Hannah Bogardus whereby Mrs. Corbly was to receive a warranty deed for certain premises in Paxton upon the payment of $3000; that this contract was entered into largely through the friendship of Mrs. Bogardus for Mrs. Corbly; that Lindsey Corbly told Mrs. Corbly that if she would assign the contract to him he would build on the lot a good, substantial building with a room on the lower floor for her

millinery business and also a room for a shoe store for Fred; that the building should have living rooms up-stairs and that Mrs. Corbly and Fred could occupy the building rent free, for life; that after considerable negotiations Mrs. Corbly accepted the offer from her father-in-law, but Mrs. Bogardus and her husband at first refused to transfer the lot to Corbly at the price for which Mrs. Bogardus, on account of friendship, had agreed to sell it to Mrs. Corbly; that on account of the agreement between Corbly and Mrs. Corbly and her husband as to the life estate to be given to Mrs. Corbly, Mrs. Bogardus and her husband finally consented to the transfer of the contract to Corbly and made the deed of the lot to him for $3000; that Corbly erected a building thereon, and it was occupied by Mrs. Corbly and her husband until August, 1911, when her husband left her and went to Nevada and brought suit for divorce; that after the separation between Mrs. Corbly and her husband Lindsey Corbly commenced to ask rent from her for the building. Considerable testimony was taken on the former hearing with reference to whether Mrs. Corbly had paid any rent for the property after the building was constructed, and as to various acts or omissions which plaintiffs in error here claim negative the claim of Mrs. Corbly that she was to occupy the premises rent free, for life. The testimony of Fred Corbly on the former hearing, given in behalf of his father, was to the effect that they had paid rent for one year from 1902 for the premises occupied by Mrs. Corbly and himself, by means of a settlement contract between Fred and Lindsey Corbly, but it is not shown that Mrs. Corbly knew anything about any such arrangement. It appears from the bill of review that since the former decision of this case Lindsey Corbly had conveyed the premises to two sons, Henry L. and William S., subject to his life estate therein. The court on the former hearing, after reviewing at some length the evidence in the case, found that Mrs. Corbly was entitled to the relief she asked for in

that bill and that she had a life interest in the land and a certain right of ingress and egress over adjoining land, and held that Lindsey Corbly be perpetually enjoined from prosecuting any suit for the possession of the premises.

The bill of review represents as a reason why the review should be granted, that since the decision on the former hearing plaintiffs in error have found a written lease alleged to have been signed by Fred Corbly, Lida Corbly and Lindsey Corbly whereby the premises were rented by Corbly to them for one year, commencing April 1, 1902, for $250, and that this court in its former opinion apparently based its findings largely on the fact that the claim as to the leasing of the premises by Corbly to Lida Corbly and her husband was largely an afterthought, and it is argued that this written lease shows to the contrary. The court in the former opinion said (p. 290) : "The whole evidence shows that the matter of charging and collecting rent for the premises was an afterthought of defendant in error, not entertained until the abandonment of plaintiff in error by his son." It is obvious from a reading of the allegations in the bill of review that Lindsey Corbly knew at the time of the original hearing that there was such a written lease as is now set up in the bill of review, and that he at that time supposed that the original lease had been lost, as he alleges that a diligent search was made for it among his papers and it could not be found; that notwithstanding the fact that the written lease had been lost and that he knew there was such a written lease he proceeded on the former hearing without setting up that a written lease had been executed and lost, relying on the theory that there was a verbal lease from month to month from himself to Lida Corbly and her husband, and that as a part of this leasing from month to month there was a further agreement that the lessees were to make at their own expense any improvements or changes they might desire. The provisions of the alleged written lease as set out in the bill of

review are considerably different from the provisions of the oral lease which it was alleged in the pleadings in the former case had been made between the parties. Among other things, there was no provision in the alleged written lease as to any improvements being made at the expense of Lida Corbly and her husband. Had Lindsey Corbly seen fit to plead the written lease in the original cause it would have been entirely competent to introduce evidence of its loss or destruction and secondary evidence of its execution and contents. The failure of Lindsey Corbly and his counsel to set up in the pleadings in the original hearing, by amendment or otherwise, the allegations now made in the bill of review that there was a written lease and that the lease had been lost, would hardly justify this court in allowing plaintiffs in error a review of the decree on that ground.

The allegations in the bill of review are to the effect that Lindsey Corbly was over eighty years old at the time of the original trial, and that he had searched among his papers, deeds and abstracts pertaining to business matters, and had his children and grandchildren assist in the search, to ascertain if the written lease could be found, but it was not found until after the case had been decided in the circuit court on the former hearing. "The bill of review for newly discovered evidence lies to obtain the benefit of evidence of facts existing at the time of the decree but discovered too late to allow of the introduction of proof concerning them at the original hearing or on petition to re-hear." (10 R. C. L. 573. See, also, Story's Eq. Pl.—10th ed.— sec. 413, and notes.) It is also the rule that the newly discovered evidence must not only be new, but "it must be such that the party by the use of reasonable diligence could not have known of it before the former hearing so as to have produced it at that time, for if there be any *laches* or negligence it will bar any relief." (*Boyden* v. *Reed*, 55 Ill. 458.) "The bill of review for newly discovered evidence is not favored by the courts. Its allowance is not a matter

of right in the party but rests in the sound discretion of the court, to be exercised cautiously and sparingly, and only under circumstances that demonstrate it to be indispensable to the merits and justice of the cause." (10 R. C. L. 574. See, also, *Hopkins* v. *Hebard,* 235 U. S. 287.) Can it properly be said that the discovery of the whereabouts of this lease brings into the case new matter which with reasonable diligence could not have been known at the former hearing? It clearly appears from the allegations in the bill of review that Lindsey Corbly knew of the lease before the decree was entered in the former hearing, unless we agree with the contention frequently made in the briefs and also alleged in the bill of review that Corbly, because he was an old man and had a great number of business matters on his mind, should be excused from a lack of diligence when he forgot the writing that he himself had signed. We do not think we should hold that this lease brings new matter into the question which could not have been produced on the former hearing by the exercise of reasonable diligence. In *Safe Deposit and Trust Co.* v. *Gittings,* 5 Ann. Cas. 941, (102 Md. 456,) in the petition for bill of review for newly discovered evidence it appeared that such evidence was unknown to the executors of Winter, who was living when the case was originally heard; that deceased had knowledge of these facts before the time of the original hearing but failed to remember them; and it was held that under such circumstances the court was not justified in allowing the executors to file a bill of review because of newly discovered evidence. By the same line of reasoning, if Corbly had forgotten about the written lease or its contents at the time of the original hearing, he would not be entitled, after finding the lease, to ask for a bill of review on that ground; and, of course, the deeding of the property by Corbly to his sons William and Henry would not give them any greater right to file a bill of review than their father would have to file a bill of review for the same cause.

The bill of review also sets out as a reason why the former decree should be reviewed, that in the fall of 1901, in furtherance of his ownership of the lot in question, and before the construction of the building, Lindsey Corbly conveyed two and one-half feet on the south side of said lot to another party and that Lida Corbly knew of the sale and made no objection thereto; that no testimony as to this transaction was introduced in the trial on the original bill because Corbly was a man about eighty-six years of age and had numerous business cares and had overlooked said transaction, and that said testimony is necessary, proper and vital. The theory apparently is that if Lida Corbly had understood and claimed at that time that she had a life interest in all the tract of land she would have objected to her father-in-law deeding away part of it and taking all the purchase price for himself. It would appear from the record of the former hearing that this strip of two and one-half feet was mentioned in the pleadings even though not referred to in the testimony, therefore it is clearly not a new matter which would form ground for a bill of review. *McDaniel* v. *James,* 23 Ill. 356.

It is apparent from a reading of the entire opinion of this court on the former hearing that the conclusion reached was not based largely or to any marked degree upon the fact that the court believed the matter of demanding rent by Lindsey Corbly for the premises in question was an afterthought, not entertained by him until the abandonment of Lida Corbly by his son Fred. It is manifest from the reasoning and the statement of facts in that opinion that the court believed that Corbly and his son Fred were endeavoring to deprive Lida Corbly of the benefit of the agreement she had made with her father-in-law to have a life interest in the premises, largely because after the divorce he had a bitter feeling against her, and that he showed clearly that he was so prejudiced against her and her rights that he wanted to punish her, and that, as stated on page 286

of the former opinion, "Fred's testimony is of such a character that little reliance can be placed on it. His testimony is contradictory all the way through." This conclusion of the court in its former opinion seems to be fully borne out by the allegations of the bill of review in this case and the affidavit in support thereof by Fred Corbly. The only evidence in the bill of review, and the affidavits in support thereof, as to the signing of the alleged written lease by Lida Corbly is the affidavit of Fred, which is denied by the affidavit of Lida Corbly. It is obvious that if on the hearing on the bill of review the only new evidence was the lease itself and Fred's testimony that Lida signed this lease with her father-in-law and her testimony that she did not sign it, such alleged new evidence would be merely cumulative and not at all decisive as to the real merits of the case. The real issue on the review, as well as on the former hearing, would be whether or not Lindsey Corbly had promised Lida Corbly to give her and her husband the life use of the property rent free if she would assign the contract with Mrs. Bogardus to him, and that issue would still have to be decided if a written lease had been introduced. The court held on the former hearing that Lida Corbly had sustained her claims in that case by testimony that was clear, definite and unequivocal, and that she was entitled to recover under the allegations of her original bill. The record in this case does not in any way lessen the strength of our conclusion reached on the former hearing that she sustained her allegations by clear and convincing proof.

We are satisfied that the chancellor in this case, the late Judge Welty, was right in sustaining the demurrer to the bill of review, and the decree of the circuit court will be affirmed.

*Decree affirmed.*